UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ERIC C. RALLS, REDORBIT, INC., AND JOHN DOES 1-10<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

This is an action for violations of 18 U.S.C. § 1030, as well as for breach of contract, tortious interference with business relations, and trespass to chattels. Microsoft seeks injunctive relief and damages to remedy Defendants' fraudulent conduct in perpetrating a sophisticated click-laundering fraud scheme on the online advertising network operated by Microsoft and to protect the integrity of Microsoft's advertising network against the fraudulent actions of Defendants.

**THE PARTIES**

1. Plaintiff Microsoft Corporation ("Microsoft") is a Washington corporation with its principal place of business in Redmond, Washington.

2. Defendant Eric C. Ralls ("Ralls") is an individual believed to be a resident of Dallas, Texas. On information and belief, Ralls was the President of RedOrbit, Inc. during the

COMPLAINT
CIV NO.

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

period of time when the events giving rise to this complaint occurred.

3. Defendant RedOrbit, Inc. ("RedOrbit") is a Texas corporation with its principal place of business in Tyler, Texas. RedOrbit publishes a website named RedOrbit.com. Through RedOrbit.com, RedOrbit purports to provide a variety of photographs, articles, and videos on science-related subjects.

4. Microsoft is unaware of the true name and capacity of Defendants sued herein as John Does 1-10 (the "John Doe Defendants"), and therefore sues the John Doe Defendants by that fictitious name. Microsoft will amend this complaint to allege the true names and capacities of the John Doe Defendants when that information is ascertained. Microsoft is informed and believes, and on that basis alleges, that the John Doe Defendants are in some manner responsible for some or all of the occurrences alleged herein. Microsoft further believes that the injuries alleged herein resulted from such occurrences, and were proximately caused by the John Doe Defendants.

5. The actions alleged herein to have been undertaken by Ralls, RedOrbit, and John Doe Defendants (collectively, "Defendants") were undertaken by each Defendant individually; were actions that each Defendant caused to occur; were actions that each Defendant authorized, controlled, directed, or had the ability to authorize, control or direct; and/or were actions in which each Defendant assisted, participated or otherwise encouraged; and are actions for which each Defendant is liable. Each Defendant aided and abetted the actions of the Defendants set forth below, in that each Defendant had knowledge of those actions, provided assistance and benefited from those actions, in whole or in part. Each of the Defendants was the agent of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of the other Defendants.

## **JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332 and 18 U.S.C. § 1030, in that at least one cause of action arises under the laws of the United States, there is diversity of citizenship among the parties, and the amount in controversy exceeds $75,000. The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367(a) in that

COMPLAINT
CIV. NO.

2

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

said claims are joined with a substantial and related claim under the laws of the United States, and form part of the same case or controversy.

7. This Court has personal jurisdiction over the Defendants because they purposefully availed themselves of the privilege of conducting activities in this forum or purposefully directed their activities towards this forum. The Defendants caused harm to Microsoft in this forum. Microsoft's claims arise from the Defendants' forum-related activities.

8. Venue in this District is proper under 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions underlying this complaint occurred in the Western District of Washington and/or a substantial part of the property that is the subject of this action is situated in this District.

## THE PRESENT CONTROVERSY

### Microsoft's adCenter Platform

9. Microsoft owns and operates an online advertising platform called Microsoft adCenter™ ("adCenter"). As part of its adCenter business, Microsoft contracts with various companies who wish to place advertisements on the Internet (hereinafter, "Advertisers"). Through the adCenter platform, Advertisers manage various aspects of their online advertising campaigns including budgeting, ad-placement, and analysis of results. Microsoft places the Advertisers' advertisements on, among other places, a network of websites published by other entities or individuals (hereinafter, "Publishers") that also participate in Microsoft's advertising network program.

10. An individual browsing a Publisher's website can click on an advertisement of interest. This action results in connecting the individual to the Advertiser's website. Once this occurs, the individual will typically receive additional information about the product or service being advertised. A usual goal of the Advertiser at this point is to entice the individual into taking additional actions such as requesting more information about or purchasing the Advertiser's products or services. These additional actions taken on an Advertiser's website are referred to as "conversions."

11. The adCenter platform then debits the account of the Advertiser that paid to place

COMPLAINT  
CIV. NO.

3

Orrick Herrington & Sutcliffe LLP  
701 5th Avenue, Suite 5600  
Seattle, Washington 98104-7097  
tel+1-206-839-4300

the advertisement, and credits the account of the Publisher of the website where the click occurred. In one common approach known as "pay-per-click," Advertisers pay for each click on their advertisement, although on the adCenter platform advertisers are generally not charged for clicks of dubious quality or fraudulent in origin. Similarly, the Publisher's account is credited for each click. A pay-per-click system allows Publishers to profit from the time, effort, and money invested in developing interesting and useful websites without requiring them to directly charge users for access to their websites. It benefits Advertisers by allowing them to place advertisements on websites likely to attract individuals interested in their products or services, and by connecting them with the individuals who have, by clicking on an advertisement, shown an interest in their products or services.

12. Consistent with its Terms of Use, Microsoft's adCenter platform gathers and maintains valuable data related to its advertising operations. Among other data, it maintains account information for both Advertisers and Publishers, records the placement of advertisements, and records various contextual data related to each click. The various data accumulated by adCenter is a significant asset for Microsoft. It enables Microsoft to manage and develop its adCenter business, and it enables the Advertisers and Publishers that participate in adCenter to effectively manage their own advertising campaigns. Microsoft adCenter's nationwide and global operations are supported by a Microsoft-owned network of computers that receive, process, store, and communicate the data to different parts of, or participants in, the adCenter network.

**Click-Fraud and Click-Laundering, Generally**

13. Pay-per-click systems are not immune to fraud. An unscrupulous Publisher could, for example, use automated scripts, end-user computers infected with viruses or spyware, or hired-individuals to generate a large number of clicks on the advertisements placed on its website by adCenter. Because such methods merely imitate the actions of a legitimate user of a web browser clicking on an advertisement, but do so for the sole purpose of generating a charge per click without having any interest in the product or service being advertised, the clicks are considered invalid. This activity is termed "click-fraud." A Publisher engaged in click-fraud can

COMPLAINT
CIV. NO.
4
Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

reap ill-gotten profits because, for each click recorded, the Publisher's account is credited at the expense of the Advertiser.

14. For example, in one simple click-fraud scheme, a Publisher hires individuals to simply browse the Publisher's website and repeatedly click on the advertisements placed there. In the absence of fraud-detection measures, each time such a hired-individual clicks on a link on the Publisher's site, the account of the Advertiser whose advertisement is clicked can potentially be debited, and the account of the Publisher of the website where the click occurred is credited. Such a click would be deemed invalid because the person behind the click has no legitimate interest in the products or services advertised and is clicking on the advertisement for the sole purpose of defrauding the Advertiser.

15. In other more sophisticated schemes, Publishers can generate a large number of invalid clicks by directing individuals browsing online to websites the Publisher controls and tricking them into clicking on online advertisements. A variety of techniques can be used to herd users to a particular website. For example, a Publisher can purchase Internet traffic from individuals or entities that have installed malware on personal computers connected to the Internet. Such computers are often recruited into networks of infected computers known as "Bot-Nets," that can be remotely controlled for illegal purposes. The malware can then be used to route individuals to websites controlled by the paying Publisher. Once on the website controlled by the Publisher, the individual can be tricked into clicking on advertisements. For example, links to advertisements can be hidden beneath links to legitimate-looking topics. By clicking on the legitimate-looking link, the individual causes a click on the invisible advertisement to be recorded.

16. It is not uncommon for a Publisher to pay other entities or individuals to find users and channel them to its website. There is nothing inherently fraudulent about this practice. In the absence of fraud, it is commonly referred to as "buying traffic." However, these other entities or individuals can also use all of the fraudulent means already alleged to generate invalid traffic. For example, the browsers of the users so-channeled are often found to be under the control of spyware or viruses. In these cases, the traffic is commonly referred to as "bad traffic." The

COMPLAINT
CIV. NO.
5
Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

Publisher that purchases bad traffic, regardless of whether it knows of the fraudulent origin of the traffic, can ultimately profit from it by using it to drive up the number of clicks on the advertisements placed on its website. At the end of the line is an Advertiser who is charged for the invalid clicks that are generated through these schemes.

17. Click fraud schemes damage Microsoft as well as the Advertisers and legitimate Publishers participating in Microsoft's adCenter advertising network or any advertising network. Advertisers are wrongfully charged for fraudulent clicks, Microsoft must expend resources in investigating and remedying the harms caused by the click fraud, adCenter operations are disrupted, the reputations of Microsoft and adCenter are damaged, and Microsoft's relations with the victimized Advertisers are harmed. Beyond this, the underground economy that has grown up around the monetization of fraudulently generated clicks depends upon, and in effect finances, the creation and propagation of malware that is used to infect and capture the computers of end-users world-wide.

18. At its very essence, click-fraud is the theft of money from Advertisers by unscrupulous fraudsters. This thievery is all the more insidious because it can be difficult to detect. Individuals and entities bent on fraud have grown adept at hiding the improper origin of the invalid clicks through technical measures meant to defeat the fraud-detection systems maintained, for example, by adCenter. Microsoft calls such attempts at hiding the improper origin of clicks as "click-laundering," and it will refer to them as such in this complaint. Click-laundering techniques include herding otherwise innocent individuals to websites where they can be tricked into triggering clicks on advertisements, and using scripts or other methods to alter the information sent, for example, to adCenter. Over time, click-laundering operations have grown in scale and sophistication and now constitute a major engine of click-fraud.

**Events Giving Rise to This Complaint**

19. This action arises out of the Defendants' general abuse of the adCenter online service by generating invalid clicks through fraudulent means and laundering those clicks to escape detection.

20. In early-to-mid-2009, Microsoft determined that RedOrbit, one of the Publishers

COMPLAINT
CIV. NO.

6

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

participating in the then-ongoing Microsoft adCenter Publisher beta program (since renamed "pubCenter") was channeling a large number of clicks of questionable origin into Microsoft adCenter. Advertisers were being charged for these clicks, and RedOrbit was being credited for them. Upon investigation, Microsoft concluded that RedOrbit was functioning as a conduit for a large number of fraudulent clicks into Microsoft's adCenter network.

21. RedOrbit had joined the Microsoft adCenter Publisher beta program (since renamed "pubCenter") on September 19, 2008. By agreeing to participate in the beta program, RedOrbit agreed to the Microsoft adCenter Publisher Pre-Release License and Service Agreement (the "Agreement"), attached hereto as Exhibit A, as all Publishers must. The Agreement prohibited, *inter alia*, the following acts:

- "work[ing] around any technical limitations in the Service or introduce[ing] or us[ing] any device, software, or routine that interferes or attempts to interfere with the operation of the Service or otherwise attempt[ing] to access the service in any manner other than those authorized by Microsoft";
- "access[ing] the Service from any websites or other locations, other than [the Publisher's] Websites that have been approved by Microsoft";
- "Cach[ing], stor[ing], copy[ing], distribut[ing], or redirect[ing] any Ads delivered by the Service";
- "directly or indirectly generat[ing] impressions or clicks on an [*sic*] Ads, or authoriz[ing] or encourag[ing] others to do so, through any automated, deceptive, fraudulent or other invalid means"
- "Edit[ing], modify[ing], filter[ing], obscure[ing], or reorder[ing] any Ads (including their associated links) supplied by the Service."

22. The Agreement further gave Microsoft the right to withhold payment for clicks that Microsoft deemed to be fraudulent, and to terminate the Publisher's participation in adCenter at any time.

23. Between September and December 2008, adCenter received data from RedOrbit's primary web property, RedOrbit.com, recording approximately 75 clicks per day on

COMPLAINT
CIV. NO.
7
Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

advertisements placed there. However, starting in January 2009 and continuing into the first few days of February 2009, adCenter recorded a substantial surge in clicks on RedOrbit.com, which increased to an average of more than 10,000 clicks per day. A graph of the click's recorded from RedOrbit.com shows the peculiar surge, which occurred in two spikes:



January - February 2009

24. Microsoft monitors the click-traffic on its adCenter network. It noticed the growth in click traffic from RedOrbit.com and began investigating. The evidence uncovered compelled Microsoft to the conclusion that one or more of the Defendants had engaged in the fraudulent generation of invalid clicks and had taken purposeful steps to launder the invalid clicks by hiding their improper origin.

25. Following the incident with RedOrbit, Microsoft undertook the arduous process of fully analyzing the nature and impact of the Defendants' actions and refunded advertisers for all clicks deemed invalid on RedOrbit's website during the time period at issue. Due to the sophisticated means believed to be employed by the Defendants to generate and launder the invalid clicks, the investigation into their activities was complex and time-consuming.

26. By fraudulently generating a high volume of invalid clicks and by channeling them into Microsoft's ad network, the Defendants sought to illegally profit at the expense of Advertisers. Microsoft expended substantial money and resources to investigate and remedy the effects of the Defendants' conduct, refunding advertisers for all invalid clicks generated on

COMPLAINT
CIV. NO.

8

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

RedOrbit's website during the time period at issue. Accordingly, Microsoft brings this action to protect the integrity of online advertising for the benefit of legitimate advertisers and publishers and to recover the damages caused by the Defendants' improper conduct.

## **CLAIM I**

**Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(4) and 1030(a)(5)**

27. Microsoft incorporates and realleges each and every allegation contained in paragraphs 1 to 26 of this Complaint.

28. On information and belief, Microsoft alleges that the Defendants knowingly transmitted fraudulent click-stream information to Microsoft's global adCenter operations computers, without authorization, and thereby intentionally caused damage to protected computers, within the scope of 18 U.S.C § 1030(a)(5).

29. In particular, the Defendants intentionally damaged Microsoft's adCenter computers by transmitting fraudulent click-stream data to them, thereby impairing the integrity and availability of data, the systems that rely on that data, and the information related to that data, with the purpose of unlawfully receiving payment for invalid clicks.

30. On information and belief, Microsoft further alleges that the Defendants knowingly and with intent to defraud, accessed a protected computer without authorization by transmitting fraudulent click-stream information to Microsoft's global adCenter operations computers, and by such means furthered the intended fraud by improperly inducing Microsoft to credit the accounts of Publishers while simultaneously debiting Advertisers' accounts, and thereby obtained the valuable use of the Microsoft adCenter platform, within the scope of 18 U.S.C § 1030(a)(4).

31. The Defendants caused loss in excess of $5000 to Microsoft in an amount to be proven at trial in that adCenter operations were disrupted; the integrity of the data used by adCenter systems was impaired; Microsoft's reputation and the reputation of adCenter were damaged; and Microsoft expended considerable resources to investigate and police the Defendants' fraudulent acts, to conduct a damage assessment, to repair the damage that resulted from those acts, and to conduct an accounting and refund the advertisers affected by the

COMPLAINT
CIV. NO.

9

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

fraudulently-generated clicks.

## CLAIM II

### Breach of Contract

32. Microsoft realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 26 above.

33. The Defendants agreed to use the pre-release version of the Microsoft adCenter Publisher online advertising service technology (the "Service"). By installing, accessing, and otherwise using the Service, the Defendants consented to the terms of the Agreement.

34. Under the terms of the Agreement, the Defendants were contractually prohibited from engaging in certain acts.

35. Microsoft performed all conditions, covenants, and promises required to be performed by Microsoft in accordance with the terms and conditions of the Agreement, except those that Microsoft was prevented or legally excused from performing and those to which its performance was waived.

36. On information and belief, the Defendants breached the terms and conditions of the Agreement by engaging in one or more of the acts prohibited by the Agreement.

37. The artificial and/or fraudulently generated clicks injured Microsoft in an amount to be proven at trial in that adCenter operations were disrupted; the integrity of the data used by adCenter systems was impaired; Microsoft's reputation and the reputation of adCenter were damaged; and Microsoft expended considerable resources to investigate and police the Defendants' fraudulent acts, to conduct a damage assessment, to repair the damage that resulted from those acts, and to conduct an accounting and refund the advertisers affected by the fraudulently-generated clicks.

38. Microsoft has been injured by the Defendants' breaches of the applicable terms and conditions in an amount to be proven at trial.

## CLAIM III

### Tortious Interference with Existing Contractual Relations

39. Microsoft realleges and incorporates by this reference each and every allegation

COMPLAINT
CIV. NO.

10

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

set forth in paragraphs 1 through 26 above.

40. During the period of the Defendants' fraudulent acts, Microsoft was a party to contracts with multiple Advertisers and Publishers. Those contracts required the Advertisers to pay Microsoft, and for Microsoft to pay Publishers, based on the number of valid clicks reported on advertisements placed on Publishers' websites.

41. On information and belief, the Defendants were aware of those contracts, and willfully and intentionally interfered with them by fraudulently and maliciously generating and transmitting to Microsoft invalid click data, knowing that the data would cause Microsoft to charge the Advertisers' accounts and credit the Publishers' accounts for the invalid clicks.

42. The Defendants' interference with the contracts was the direct and proximate cause of damage to Microsoft in an amount to be proven at trial. In particular, the Defendants' acts damaged Microsoft in that adCenter operations were disrupted; the integrity of the data used by adCenter systems was impaired; Microsoft's reputation and the reputation of adCenter were damaged; Microsoft expended considerable resources to investigate and police the Defendants' fraudulent acts, to conduct a damage assessment, to repair the damage that resulted from those acts, and to conduct an accounting and refund the advertisers affected by the fraudulently-generated clicks; and Microsoft's business with the Advertisers was harmed.

## **CLAIM IV**

### **Trespass to Chattels**

43. Microsoft realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 26 above.

44. To interfere wrongfully with the use or possession of property is a trespass to chattels. On information and belief, Microsoft alleges that the Defendants interfered with Microsoft's use of adCenter by fraudulently and maliciously generating and communicating invalid data to it, and causing Microsoft to store and process the invalid data,to debit the accounts of Advertisers for the invalid clicks, and to credit the account of RedOrbit.

45. As a result of the Defendants' interference with Microsoft's use of adCenter, Microsoft was harmed in an amount to be proven at trial. In particular, adCenter operations were

COMPLAINT
CIV. NO.
11
Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

disrupted; the integrity of the data used by adCenter systems was impaired; Microsoft's reputation and the reputation of adCenter were damaged; and Microsoft expended considerable resources to investigate and police the Defendants' fraudulent acts, to conduct a damage assessment, to repair the damage that resulted from those acts, and to conduct an accounting and refund the advertisers affected by the fraudulently-generated clicks.

## **PRAYER FOR RELIEF**

WHEREFORE, Microsoft prays for Judgment against the Defendants as follows:

1. For temporary and permanent injunctive relief against the Defendants, and that the Defendants, their officers, agents, representatives, servants, employees, attorneys, successors and assignees, and all others in active concert or participation with the Defendants, be enjoined and restrained from continuing to violate the laws alleged herein; and be enjoined and restrained from assisting, aiding, or abetting any other person or business entity in engaging in or performing any of such;

2. For actual damages, in an amount to be proven at trial;

3. For disgorgement of the Defendants' ill-gotten profits;

4. For attorneys' fees and costs;

5. For exemplary and punitive damages, and

6. For such other or additional relief as is just and proper.

## **Jury Trial Demanded**

Dated: May 17, 2010.

Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP

By: ___/s/ Mark Parris_____
Mark Parris (Bar No. 13870)
mparris@orrick.com
Jeffrey Cox (Bar No. 37534)
jcox@orrick.com
701 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: (206) 839-4300

*Attorneys for Plaintiff*
MICROSOFT CORPORATION

COMPLAINT
CIV. NO.

12

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300