The Hon. John C. Coughenour

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>ERIC C. RALLS, REDORBIT, INC., AND JOHN DOES 1-10<br><br>    Defendants. | Case No. 2:10-CV-00818-JCC<br><br>**MICROSOFT CORPORATION'S OPPOSITION TO MOTION TO DISMISS AND MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANTS ERIC C. RALLS AND REDORBIT, INC.**<br><br>**Noted on Motion Calendar: October 29, 2010**<br><br>**Oral Argument Requested** |

## I.    INTRODUCTION

Defendants' Motion to Dismiss and Alternative Motion for Partial Summary Judgment (the "Motion") should be denied.  Microsoft's claims more than satisfy the relevant pleading standards, and Defendants further fail to demonstrate that they are entitled to judgment as a matter of law on *any* of Microsoft's claims.  Their Motion must be denied, and they must answer each of Microsoft's allegations.

Defendants scramble their Motion to Dismiss with their Motion for Partial Summary Judgment.  They provide no explanation of the distinct legal standards under which the Court must evaluate dismissal and summary judgment and do not clearly identify which arguments support which form of relief.  As to Defendants' arguments, they meet neither the burden for

dismissal nor for summary judgment.  For clarity of the record, Microsoft will first address Defendants' Motion to Dismiss, and then, in a separate section, respond to Defendants' Motion for Partial Summary Judgment.

Defendants' Motion to Dismiss rests on two theories: (1) an alleged contractual time bar and (2) an assertion of failure to plead certain elements of various claims.  Both of these theories are meritless.

Defendants' contractual time bar fails against Ralls because he was never a party to any contract, thus making any contractual argument meritless.  Neither his status as Red Orbit's president nor his use of adCenter computers on behalf of RedOrbit change this fact.  Similarly, Defendants assert that all Washington state law claims against Ralls must be dismissed based on a choice of law provision in the contract.  As Ralls was not a party to the contract, the Washington claims are proper.

Defendants' contractual time bar argument with respect to RedOrbit fails because RedOrbit intentionally concealed its wrongdoing to try and delay Microsoft.  Microsoft only had sufficient evidence to assert a claim after RedOrbit and Ralls asserted an unlawful claim in May 21, 2009, and Microsoft completed its investigation in June 2009.  As this action was filed within a year of these two events, the contractual bar is inapplicable.

Defendants next assert that Microsoft has failed to adequately plead 1) fraud; 2) knowledge; or 3) claims arising under the Computer Fraud and Abuse Act ("CFAA").  These arguments rest on misstatements of the relevant pleading standards combined with a highly selective reading of Microsoft's allegations.  The factual allegations fully meet the proper pleading standards.

## II.   BACKGROUND

This case is about an attempt to steal over a quarter of a million dollars from advertisers affiliated with Microsoft's online advertising platform.  RedOrbit, with Ralls as its president, owns and operates a website, RedOrbit.com, through which it publishes photographs, articles, and videos on science-related topics.  Am. Compl. ¶¶ 2-3.  Since at least 2005, a large part of RedOrbit's business has been based on displaying advertisements on RedOrbit.com.  *Id*. ¶¶ 23-

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

2

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

27.  RedOrbit receives payment each time a user views an advertisement or clicks on an advertisement.  *Id.* ¶¶ 25, 38-39, 52.

Microsoft owns and operates an online advertising platform known as adCenter.™[1]  *Id.* ¶ 9.  AdCenter brings together website publishers who want to make money by hosting online advertisements with advertisers willing to pay to place their advertisements on various Web sites.  *Id.*  AdCenter employs a pay-per-click model: each time an advertisement is clicked, the advertiser is charged, and the website publisher hosting the advertisement is paid.  *Id.* ¶ 11.  Microsoft receives a percentage of the money exchanged for each click and thus its profits increase with the number of clicks on advertisements.

Publishers try to attract as many users to their Web sites as possible, hoping that those users will click on the advertisements.  *Id.* ¶ 11.  Some publishers attempt to increase the viewership of their Web sites by buying online traffic from other companies that aggregate traffic from various sources and resell it to publishers.  *Id.* ¶ 17.  Buying online traffic is not fraudulent in and of itself, but it opens the door to fraud in that the resellers can tap into sources of traffic generated through fraudulent means.  *Id.*  The fraudulent means may involve spreading malware to end-user computers and then forcing those computers to connect to Web sites that have purchased traffic.  *Id.* ¶ 15.  Some malware used to infect end-users' computers can be programmed to simulate clicks on advertisements on the publisher's website.  *Id.*  When fraudulently generated traffic is detected, the publisher can assert ignorance of its origin, making it difficult to determine if the publisher is culpable for the click-fraud.

Click-fraud is, at its essence, the theft of money from advertisers.  *Id.* ¶ 19.  Advertisers are forced to pay for clicks on their advertisements that are fraudulently generated and valueless, rather than what the advertisers believe they are paying for—potential customers interested in their products or services.  Because Microsoft owns and operates adCenter, it vigorously seeks to protect those advertisers with which it does business by actively detecting and combating click-fraud.

This case is atypical in several regards.  First, Microsoft had never before seen click-

---

[1] adCenter has been renamed "pubCenter"™ but is referred to herein by its original name.

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

3

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

1    fraud and click-laundering (obfuscating the operation and origin of click-fraud) of this type or

2    on this scale, and determining how it was executed presented a significant technical challenge.

3    Second, while uncertain for many months, evidence of RedOrbit and Ralls' culpability grew to

4    be clear over the course of Microsoft's investigation. Schmidt Decl. ¶¶ 4-6  The click-fraud

5    occurred in a very dramatic surge over a two-week period between January 20 and February 4,

6    2009. *Id*. ¶ 28-38.  Ralls admitted he had been watching the surge closely (*id*. ¶ 40), yet as

7    soon as Microsoft started investigating, RedOrbit and Ralls began dissembling about the causes

8    of the click-surge. *Id*. ¶ 40-49.  Then they brazenly persisted in trying to extract payment from

9    Microsoft, even well after there could have been no doubt about the fraudulent nature of the

10    traffic. *Id*. ¶ 59.  Finally, RedOrbit and Ralls' history shows that they are seasoned purchasers

11    of bad traffic who have used it to boost revenues since at least 2005. *See*, *e.g.*, *Id*. ¶ 24 (2005) ¶

12    25 (2006); ¶¶ 26-27 (2007 and 2008); ¶¶ 28-39 (2009); and ¶¶51-57 (2009 and 2010).

13        RedOrbit joined Microsoft's adCenter beta program on or around September 19, 2008.

14    *Id*. ¶ 21.  By joining, RedOrbit agreed to the Microsoft adCenter Publisher Pre-Release License

15    and Service Agreement (the "Agreement"). *Id*.  RedOrbit and Microsoft were the sole parties

16    to the Agreement. *Id*. ¶ 21.  The Agreement prohibited generating impressions or clicks,

17    directly or indirectly, on advertisements, or authorizing or encouraging others to do so, through

18    any automated, deceptive, fraudulent or other invalid means. *Id*.  The Agreement also provided

19    that "[a]ny claim related to this contract or the Service may not be brought unless brought

20    within 1 year"; that "[t]he 1 year period begins on the date when the claim first could be filed";

21    and that, "[i]f it is not filed in time, then that claim is permanently barred." *Id*. Ex. A ¶ 17.

22        The Amended Complaint alleges that between January 20 and February 4, 2009, Ralls

23    and RedOrbit purchased traffic from one or more traffic resellers. *Id*. ¶ 28.  This traffic

24    contained a percentage of traffic generated by fraudulent means intended to generate clicks on

25    advertisements. *Id*. ¶ 28.  After reaching RedOrbit.com, this traffic generated a huge number of

26    clicks on advertisements placed on RedOrbit.com by adCenter.  *Id*. ¶ 28.  Starting on January

27    20, 2009 and continuing until February 4, 2009, clicks increased from an average of 75 clicks

28    per day, to an average of more than 10,000 per day. *Id*. ¶ 30.

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

4

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

Each fraudulent click sent fraudulent information to the adCenter computers. *Id*. ¶ 38. This corrupted data on those computers, which were used to determine which advertiser to charge for the click, and whether and how much RedOrbit should be credited. *Id*. RedOrbit and Ralls' illicit credits grew with each fraudulent click. *Id.* Microsoft believes that Ralls and RedOrbit purchased this traffic knowing that a portion of it was fraudulently generated, and intending to profit from it by using it to generate clicks on advertisements. *Id*. ¶ 29.

On April 14, 2009, Ralls and RedOrbit sought payment from Microsoft for clicks recorded in January and February 2009. *Id*. ¶ 39.  On May 21, 2009, Ralls and RedOrbit again sought to extract payment from Microsoft, this time demanding that Microsoft pay RedOrbit $252,001.32. *Id*.  Microsoft believes that by these acts, Ralls and RedOrbit intended to profit from the click-fraud operation. *Id*.  Microsoft, in the meantime, had already credited the accounts of the advertisers who had been charged for the bad clicks. *Id*. ¶ 31.  Were it not for Microsoft's diligence, it would have been an inadvertent beneficiary of profits generated by the click-fraud.

In January 2009, Microsoft began a thorough investigation of the click-surge. *Id*. ¶¶ 31, 40, 46, 48-49.  RedOrbit and Ralls delayed the investigation, first by affirmatively responding to the inquiries of Microsoft's investigators with a series of explanations, which, while facially plausible, could not explain the click-surge and then by destroying data Microsoft needed and requested. *Id*. ¶¶ 40-50.  RedOrbit attempted to lead Microsoft to believe that the click-surge resulted from greater advertisement relevancy (*id*. ¶ 41), better and more frequent advertisement placement (*id*. ¶ 43), and changes to the video player on RedOrbit.com. *Id*. ¶ 44. Later analysis showed these explanations to be false. *Id*. ¶¶ 32-36, 42-44.  Microsoft also sought RedOrbit's Weblogs. *Id*., ¶ 46.  However, even as Microsoft sought the Weblogs, RedOrbit allowed them to be destroyed (*id*. ¶ 47), during which time, it told Microsoft that it was confused by the meaning of the term "Weblogs." *Id*. ¶ 46.  It then required Microsoft to sign an NDA to review the by-then nonexistent Weblogs (*id*. ¶ 48) and then failed to turn over the Weblogs it had promised. *Id*. ¶ 49.

RedOrbit and Ralls' use of malware-generated traffic to defraud advertisers did not end

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

5

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

when RedOrbit's participation in adCenter was terminated, nor even after Microsoft filed its Complaint. *Id*. ¶¶ 51-56. Microsoft has received credible reports showing that end-user computers infected with malware were still being forced to connect to RedOrbit.com between June 2009 and August 2010. *Id*. ¶¶ 53-56. Once hijacked to RedOrbit.com, those users' browsers were forced to display advertisements for Microsoft products, advertisements which RedOrbit had acquired through intermediaries that distribute advertisements for many companies. *Id*. ¶¶ 52-56. This advertising is paid for using a pay-per-impression model as opposed to a pay-per-click model. *Id*. Microsoft pays and RedOrbit profits each time a user views a Microsoft advertisement; no click is even necessary. Microsoft is unable to prevent these advertisements from being placed on RedOrbit.com after the intermediaries are in control of the advertisements.

## III.   DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED

A plaintiff's well-pleaded complaint survives a motion to dismiss where it "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss, a court accepts plaintiff's well-pleaded allegations as true and construes the complaint in the light most favorable to the plaintiff. *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir. 2005) (citing *Cervantes v. United States,* 330 F.3d 1186, 1187 (9th Cir. 2003)). Microsoft's well-pleaded factual allegations, accepted as true and construed in the light most favorable to Microsoft, state claims to relief that are eminently plausible on their face.

### A.   Microsoft's Claims Are Not Barred by the Agreement's One-Year Limitations Period

#### 1.   Ralls was not a party to the Agreement so the Agreement's one-year limitations period does not apply to claims against him.

Defendants assert that, because Ralls accessed and used adCenter's computers to manage the RedOrbit account, it "follows straightforwardly" that Ralls is also party to the Agreement and therefore Microsoft's claims against him are barred by the Agreement's one-year limitations period. Mot. at 12. Defendants cite no legal authority to support this. But it is well accepted that "[w]hen an agent acting with actual or apparent authority makes a contract

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

6

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

on behalf of a disclosed principal, . . . the agent *is not a party to the contract* unless the agent and third party agree otherwise."  Restatement (Third) of Agency, § 6.01 (2006) (emphasis added).  *See e.g.*, *Equipto Div. Aurora Equip. Co. v. Yarmouth*, 924 P.2d 405 (Wash. Ct. App. 1996) (a person who contracts in the name of a fully or partially disclosed principal is not liable on the contract) (reversed and remanded on other grounds).

The Agreement was between RedOrbit and Microsoft (Am. Compl. ¶¶ 21, 30, 65), and Ralls accessed adCenter to manage *RedOrbit's* account.  *Id.* ¶ 60.  It is clear on the face of the Amended Complaint that RedOrbit—not Ralls—was Microsoft's counterparty to the Agreement.  *See, e.g.*, *id*, ¶¶ 21 (RedOrbit joined the . . . program . . . . By agreeing to participate . . . RedOrbit agreed to the [Agreement]"); 23 (RedOrbit's history . . . was unknown to Microsoft when it allowed RedOrbit to join the . . . program"); 30 ("RedOrbit joined the adCenter program"); 65 ("RedOrbit agreed to use [adCenter] . . .").  These allegations must be taken as true and construed in the light most favorable to Microsoft.  *See Knievel*, 393 F.3d at 1072.  Consequently, there is simply no basis for arguing that Ralls is a party to the Agreement and entitled to invoke its limitations period.

Defendants do not argue in their Motion that RedOrbit was an undisclosed principal on whose behalf Ralls was contracting.  Nor do they argue that the Amended Complaint alleges any fact permitting that inference.  But even if the Court finds that the Amended Complaint alleges insufficient facts for it to reasonably infer that Ralls was acting on behalf of RedOrbit, Microsoft could easily amend its complaint to allege the necessary additional facts.  Thus, Defendants' position that "it is simply impossible for Microsoft to amend" (Mot. at 12:23) around this argument is outlandish, and there is no justification to dismiss the Amended Complaint as to Ralls with prejudice.

### 2.  Microsoft's claims against RedOrbit could first be filed in June 2009.

Defendants argue that the click-surge related claims against RedOrbit are also time-barred, asserting that Microsoft had all the evidence it needed to assert its claims "no later than when the surge ended in February 2009."  The Agreement states that, "[a]ny claim related to

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

7

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington 98104-7097
tel+1-206-839-4300

1    this contract or the Service may not be brought within 1 year. *The 1 year period begins on the*

2    *date when the claim first could be filed.*"  Am. Compl. Ex. A ¶ 17 (emphasis added).  Microsoft

3    did not have the evidence necessary to file any of its claims until June 2009, and therefore its

4    May 17, 2010 complaint falls within the one-year limitation period.

5        All Microsoft's surge-related claims require a degree of *scienter*.  Both Computer Fraud

6    and Abuse Act claims require knowledge.  *See* 18 U.S.C. § 1030(a)(4) and (a)(5)(A) (2008).

7    The breach of contract claim requires intentional conduct as it is based on breach of a provision

8    that prohibits a party from "directly or indirectly generat[ing] impressions or clicks on an [sic]

9    Ads, or authorize[ing] or encourage[ing] others to do so, through any automated, deceptive,

10   fraudulent, or other invalid means."  Am. Compl. ¶ 68.  Tortious interference requires

11   willfulness.  *See* 16A David K. DeWolf & Keller W. Allen, Wash. Practice Series, Tort Law &

12   Practice § 22.2 (3d ed. Supp. 2010); *Tippett v. Hart*, 497 S.W.2d 606, 609 (Tex. Civ. App.

13   1973)  Microsoft's trespass to chattels claims require intentionality under both Washington and

14   Texas law.  *See Sexton v. Brown*, Case No. 61363-4I, WL 4616705, at *5 (Wash. Ct. App.

15   2008) (citing Restatement (Second) Torts § 217 (1965)); *Armstrong v. Benavides*, 180 S.W.3d

16   359, 363 (Tex. Ct. App. 2005); *Briggs v. Rodriguez*, 236 S.W.2d 510 (Tex. Civ. App. 1951).

17       The Amended Complaint makes it clear that Microsoft did not have sufficient evidence

18   of *scienter* until after May 17, 2009 (one year before Microsoft filed its complaint).  The data

19   associated with the fraudulent clicks transmitted to Microsoft's adCenter Computers between

20   January 20 and February 4, 2009 showed a technically novel and large scale click-fraud and

21   click laundering attack had occurred, but provided no evidence of Defendants' state of mind.

22   Am. Compl. ¶¶ 31-50.  It prompted Microsoft to start an investigation, but was not enough for

23   it to conclude that it had a basis to assert specific claims against Ralls and RedOrbit.  *Id.*

24       The evidence of *scienter* that tipped the scales and allowed Microsoft to bring its claims

25   came in four parts.  First, on May 21, 2009, RedOrbit and Ralls demanded that Microsoft pay

26   approximately a quarter of a million dollars for the obviously fraudulent clicks that occurred on

27   RedOrbit.com between January 20 and February 4, 2009.  *Id.* ¶ 39.  Second, in June 2009, it

28   became clear that RedOrbit had acted in bad faith in negotiations to give Microsoft its

Weblogs. *Id.* ¶ 49.  Third, in June 2009, RedOrbit informed Microsoft that, all along, it had followed a policy of destroying its Weblogs after three days.  This raised a significant question as to whether Ralls' protestation in February that he was confused by the request for Weblogs was false.  *Id.* ¶¶ 46, 49.  Fourth, Microsoft carefully analyzed the data that RedOrbit finally provided in June 2009 and, through this analysis, determined that RedOrbit and Ralls were culpable for the click-fraud and click-laundering operation.  *Id.* ¶50.

Defendants argue that *all* of Microsoft's claims require an element of knowledge (Mot. at 14), yet don't explain how Microsoft could have filed claims before first determining the extent to which RedOrbit and Ralls *knowingly* participated in the click-fraud.  This omission is fatal given their assertion that all of Microsoft's allegations relating to the click-surge also "are equally consistent with the obvious alternative explanation that [Defendants] inadvertently purchased bad traffic."  Mot. at 14:18-19.  That might be true, but for the evidence of knowledge.

Defendants also argue that Microsoft's decision to terminate RedOrbit's participation in the adCenter program on February 16, 2009 shows that "it understood the basis for the click-surge claims it is now asserting."  Mot. at 11:26-27.  However, the Agreement allows Microsoft to terminate the Agreement at any time, for any reason, and at its sole discretion (Am. Compl. Ex. A ¶12).  Obviously, terminating RedOrbit's participation in adCenter did not require evidence of RedOrbit's *scienter* nor any other element of the claims brought by Microsoft.

Even though Microsoft began its investigation in January 2009, before the click-surge ended (*Id.* ¶ 31), and even though it diligently pursued that investigation for months thereafter (*id.* ¶¶ 31, 40-50), it did not have sufficient evidence of RedOrbit's, or for that matter, Ralls', knowledge  until June 2009.  *Id.* ¶¶ 31, 50.  Thus, the one year clock began to run only in June 2009, and Microsoft's May 17, 2010 complaint was well within the one-year window.

### 3.     Defendants' fraudulent concealment would have tolled the limitations clock even if it had started running in February 2009.

Even if the one-year limitations clock had started running shortly after the click-surge ended, Defendants' fraudulent concealment would have immediately tolled it.  To state a claim

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

9

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

1    for fraudulent concealment, a plaintiff "must plead with particularity the circumstances

2    surrounding the concealment and state facts showing his due diligence in trying to uncover the

3    facts." *Gibson v. United States*, 781 F.2d 1334, 1345 (9th Cir. 1986).  Additionally, the

4    plaintiff "must allege facts showing affirmative conduct upon the part of the defendant which

5    would, under the circumstances of the case, lead a reasonable person to believe that he did not

6    have a claim for relief." *Id*.  The Amended Complaint meets this standard.

7           The Amended Complaint pleads with particularity the circumstances surrounding the

8    concealment and leaves no doubt as to Microsoft's diligence in trying to uncover the facts

9    associated with the click-fraud.  Starting in January, even before the surge ended, Microsoft

10   repeatedly sought information from RedOrbit that might explain the surge.  Am. Compl. ¶¶ 31,

11   40.  It extensively analyzed information from its own logs related to the click-surge.  *Id*. ¶¶ 31-

12   36.  It sought RedOrbit's Weblogs, and negotiated an NDA which, it was led to believe, would

13   give it access to RedOrbit's Weblogs. *Id*. ¶¶ 46-49.  It then inspected and analyzed the more

14   limited information that RedOrbit actually provided under the NDA.  *Id*. ¶ 49.  It also assessed

15   the degree of *scienter* evidenced by Defendants' repeated attempts to extract money from

16   Microsoft on April 14 and May 21, 2009 (*id*. ¶ 39); the fact that Defendants promised to

17   provide its Weblogs and then in June 2009 failed to do so (*id*. ¶¶ 48-49); and that, in June, 2009

18   it became clear that Defendants not only knew what Weblogs were, but had a policy of

19   destroying them after three days. *Id*. ¶ 49.

20          The Amended Complaint also alleges facts showing that RedOrbit took affirmative

21   steps, which would, under the circumstances, have lead a reasonable person to believe that he

22   or she did not have claim for relief.  RedOrbit affirmatively responded to Microsoft's

23   investigators with explanations that were facially plausible.  *Id*. ¶¶ 41-44.  RedOrbit tried to

24   convince Microsoft that the click-surge resulted from greater advertisement relevancy (*id*. ¶¶

25   41-42), better and more frequent advertisement placement (*id*. ¶ 43), and changes to a video

26   player on RedOrbit.com.  *Id*. ¶ 44.  Later analysis would show that none of these explanations,

27   even in combination, could explain the click-surge.  *Id*. ¶¶ 32-37, 41-44.

28          Even after RedOrbit gave a series of false explanations for the surge, Microsoft, in its

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

10

diligence, sought RedOrbit's Weblogs to determine whether the surge had resulted from click-fraud and whether RedOrbit was a knowing participant.  *Id.* ¶ 46.  In response, RedOrbit took additional steps to delay Microsoft's investigation, first allowing its Weblogs to be destroyed (*id.* ¶¶ 47, 49) while claiming to be confused by the meaning of the term "Weblogs" (*id.* ¶ 46), then requiring Microsoft to negotiate an NDA to review its by-then non existent Weblogs (*id.* ¶ 48), and finally failing to provide Microsoft the promised Weblogs. *Id.* ¶ 49.  These affirmative acts delayed Microsoft determination that it had legal claims against RedOrbit until June 2009.

Defendants argue that Microsoft's fraudulent concealment argument fails because Microsoft was not deceived.  However, to state a plausible claim of fraudulent concealment, Microsoft need only allege facts showing that Defendants' actions would, "under the circumstances of the case lead *a reasonable person* to believe that he did not have a claim for relief."  *Gibson*, 781 F.2d at 1345 (emphasis added).  Microsoft has done so by alleging facts that show that Defendants' affirmative statements could be debunked only by careful and rigorous analysis of the forensic evidence.  Am. Compl. ¶¶ 32-36, 41-44.

### B.   Microsoft Has Alleged Fraud With Particularity Where Required

Defendants argue that Microsoft has failed to plead fraud with particularity because it "fails to attribute a single overt act of fraud to RedOrbit or Ralls."  Mot. at 13:19-20.  They rely on this argument in their attempt to dismiss Microsoft's claims under 18 U.S.C. § 1030(a)(4), for breach of contract, tortious interference, and trespass to chattels.  Defendants concede it does not apply to Microsoft's claim under 18 U.S.C. § 1030(a)(5)(A).  Mot. at 15.

The requirement that the circumstances of fraud be pleaded with particularity are satisfied if the plaintiff provides the who, what, where, when, and how of the alleged fraud.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).  Microsoft need not plead knowledge, intent, or malice with particularity; these may be alleged generally.  Fed. R. Civ. P. 9(b).

The Amended Complaint meets this requirement. It alleges that, between January 20 and February 4, 2009 Ralls and RedOrbit purchased fraudulently generated traffic (Am. Compl. ¶ 28), intending to use the traffic to generate clicks on adCenter advertisements placed by

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

11

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

Microsoft on RedOrbit.com. *Id.* ¶29. Each fraudulent click transmitted data to adCenter's computers, which then improperly credited RedOrbit's account while debiting the accounts of the advertisers. *Id.* ¶ 38. Ralls and RedOrbit then attempted to cash out their credits by pursuing Microsoft for a quarter of a million dollars. *Id.* ¶ 39. The fraudulent clicks occurred on RedOrbit.com, and the consequent data corruption occurred on Microsoft-owned computers. *Id.* ¶¶ 30, 38. Microsoft's Amended Complaint thus spells out the "who, what, where, when and how" of the alleged fraud, and meets the heightened pleading standard under Fed. R. Civ. P. 9(b).

Defendants argue that Microsoft fails to allege that RedOrbit or Ralls ever wrote or deployed a malware program or that RedOrbit or Ralls "actually" generated an invalid click. This is irrelevant. Microsoft's claims do not depend in any way on RedOrbit or Ralls having written or deployed the malware themselves or clicked an advertisement. Defendants also argue that Microsoft has not specifically identified a single purchase of traffic by RedOrbit or Ralls. However, Microsoft has alleged that at least one such purchase occurred on or around January 20, 2009. Am. Compl. ¶59.

### C.    Microsoft Has Sufficiently Alleged RedOrbit and Ralls' Knowledge

Defendants next argue that Microsoft has not sufficiently alleged knowledge and that therefore, *all* Microsoft's claims should be dismissed. However, this argument rests on a distortion of the correct pleading standards (e.g., knowledge is not even an element of the Washington Consumer Protection Act claims) and ignores the avalanche of well-pleaded facts in the First Amended Complaint.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is *not* akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The facts alleged in the Amended Complaint compel the inference that RedOrbit and

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

12

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

Ralls knew the traffic they purchased was fraudulent and intended to use it to boost advertising revenues.  In a 2006 litigation, RedOrbit and Ralls admitted buying traffic in 2005 that they knew was malware-generated.  Am. Compl. ¶ 24.  In a 2007 litigation, RedOrbit and Ralls were accused of commissioning software designed to hijack users' browsers and take them to RedOrbit.com.  Am. Compl. ¶ 25.  In addition, Microsoft has received 15 credible reports showing instances during each year between 2006 and 2010 when malware-infected computers were forced to connect to RedOrbit.com.  Am. Compl.  ¶¶ 26, 53-56. No doubt these reports represent a small fraction of the total number of times malware forced infected computers to connect to RedOrbit.com.  In addition, the striking nature of the click-surge combined with Ralls' admission that he had been watching the spike in clicks closely, RedOrbit and Ralls' fraudulent concealment and destruction of highly-relevant evidence, and their attempts to extract payment from Microsoft create a powerful inference that they had the requisite knowledge.

Defendants also argue that Microsoft's claims under the Washington Consumer Protection Act (CPA) should be dismissed for a failure to plead knowledge.  However, knowledge is not a prerequisite to establish a CPA claim; thus, there is no requirement to plead it.  The plaintiff must only establish an unfair or deceptive act or practice; occurring in trade or commerce; public interest impact; injury to plaintiff in business or property; and causation. *Carlile v. Harbour Homes, Inc.*, 194 P.3d 280, 289 (Wash. Ct. App. 2008).  The unfair or deceptive act or practice need not be intended to deceive; it need only have the capacity to deceive a substantial portion of the public. *Id.*  Regardless, RedOrbit and Ralls' long history of boosting ad revenues through bad traffic establishes that they knew they were engaging in deceptive practices and intended to do so.

### D. Microsoft Has Adequately Pleaded Both Its CFAA Claims

#### 1. Intent to defraud under 1030(a)(4) need not be alleged with particularity.

Defendants argue that Microsoft fails to meet the pleading standard under 18 U.S.C 1030(a)(4) because that statute's "requirement that a defendant act 'with intent to defraud' and

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

13

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

in a way that 'furthers the intended fraud' is 'quite plainly' subject to Rule 9(b)" Mot. at 15:6-7.  However, Defendants' argument ignores the relevant pleading standard.  In *Shurgard Storage Cntrs., Inc. v. Safeguard Self Storage, Inc.* 119 F. Supp.2d 1121, (W.D. Wash. 2000) (Zilly J), this Court held that "the CFAA's use of 'fraud' simply means wrongdoing and not proof of the common law elements of fraud."  *Id*. at 1126.  *See also eBay, Inc. v. Digital Point Solutions*, 608 F. Supp.2d 1156, 1164 (N.D. Cal. 2009) ("'fraud' . . . only requires a showing of unlawful access") (*citing Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp.2d 1122 (E.D. Cal., 2008)).

Defendants dispute that this is the appropriate meaning of "fraud" under the CFAA, citing *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 765 (N.D. Ill., 2009) for the proposition that "intent to defraud" and "furthers the intended fraud," as used in the statute, must be pleaded to the 9(b) standard.  However, the court in *Motorola* explicitly stated that "intent to defraud need not be pleaded with particularity." *Id*. at 765.  It did hold that "a party must state with particularity the circumstances constituting fraud." *Id*.  But even if the Court were to adopt this higher standard over its own precedent, Microsoft meets it, having pleaded the who, what, where, when, and how of Defendants' fraudulent conduct. *See* Section II(B), pp. 11-12, *supra*.

### 2. Defendants obtained something of value through their violation of 18 U.S.C. § 1030(a)(4).

Defendants argue that Microsoft's claim under 18 U.S.C. § 1030(a)(4) must also be dismissed "because Microsoft has not alleged that Ralls or RedOrbit 'obtained anything of value' by means of the alleged violation."  Mot. at 15:12-14.  The sole basis for this argument is that Defendants were not able to cash in the over a quarter million dollars worth of credits they received through the click-fraud. *Id*.  This is based on an unduly constrained interpretation of the term "anything of value" that is unsupported by the law and that conflates "value" with "cash."

Obtaining a thing of value under 18 U.S.C. § 1030(a)(4) does not necessarily require that the defendant directly profit monetarily from the violation;  the value one obtains from a

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

14

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

violation of the other elements of the statute "is relative to one's needs and objectives." *United States v. Czubinski*, 106 F.3d 1069, 1078 (1st Cir. 1997); *see also In re Am. Online, Inc. Version 5.0 Software Litig.*, 168 F.Supp. 2d 1359 (S.D. Fla. 2001) (finding that customers and goodwill were things of "value" that one could obtain in violation of the statute).

RedOrbit and Ralls undoubtedly received value through their illicit acts, namely, adCenter credits in the amount of $252,000. Am. Compl. ¶ 62. The clear value that Defendants placed on those credits is shown by their demanding remittance from Microsoft, not once, but twice. *Id.* ¶ 39. That RedOrbit and Ralls were unsuccessful, despite numerous attempts, to convert these credits into cash, does not mean the credits were not "anything of value."

### 3.   Microsoft Has Adequately Stated a Claim Under 18 U.S.C. § 1030(a)(5)(A).

#### a.   Microsoft has sufficiently alleged the element of knowledge.

Defendants argue that Microsoft fails to state a claim under 1030(a)(5) because "all of Microsoft's relevant allegations of knowledge are deficient under Rule 8(a) and *Iqbal* because they are equally consistent with the obvious alternative explanation that Ralls and RedOrbit purchased bad traffic unwittingly." Mot. at 15:10-12. However, Defendants' interpretation of *Iqbal* is wrong: neither *Iqbal*, nor its predecessor *Twombly*, suggest that a complaint should be dismissed merely because there is an obvious alternative explanation for the facts alleged. *See Iqbal*, 129 S. Ct. at 1949 ("[t]he plausibility standard is not akin to a 'probability requirement'"). Rather, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Beyond that, as a purely factual matter, Microsoft's allegations are *not* equally consistent with the "obvious alternative explanation" that RedOrbit and Ralls purchased bad traffic unwittingly. Such an explanation is not only not obvious, but implausible, given RedOrbit and Ralls' long history dating back to 2005 of using bad traffic to boost advertising revenues, the striking nature of the February - January 2009 click-surge, Ralls' admission that

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

15

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

1    he had been watching the spike in clicks closely, RedOrbit and Ralls' fraudulent concealing of

2    evidence, and their multiple attempts to extract payment from Microsoft.  *Id.* at 1950 ("the

3    reviewing court [should] draw on its judicial experience and common sense.").

### b.    18 U.S.C. § 1030(a)(5)(A) does not require "accessing" a protected computer without or in excess of authorization.

6    Defendants argue that Microsoft's claim under 1030(a)(5)(A) fails because it does not

7    allege that Ralls or RedOrbit "accessed its computers 'without authorization.'"  Mot. at 16:2.

8    But 18 § U.S.C 1030(a)(5)(A) does not require "access" of any kind, either without or in excess

9    of authorization.  One violates 1030(a)(5)(A) if one "knowingly causes the transmission of a

10   program, information, code, or command, and as a result of such conduct, intentionally causes

11   damage without authorization, to a protected computer"  18 § U.S.C. 1030(a)(5)(A) (2008).

12   Microsoft has sufficiently pleaded the actual required elements of 1030(a)(5)(A):

13   Defendants transmitted fraudulent data to Microsoft's adCenter computers, and as a result,

14   intentionally corrupted the data on those computers without authorization.  Am. Compl. ¶ 61.

15   The Agreement between Microsoft and RedOrbit that authorized RedOrbit to use the adCenter

16   computers explicitly prohibited RedOrbit from transmitting to it exactly the kind of fraudulent

17   data that RedOrbit did transmit to it.  Defendants' reliance on *LVRC Holdings LLC v. Brekka*,

18   581 F.3d 1127 (2009) is inapposite.  *LVRC* deals with the distinction between "*access* without

19   authorization" and "*access* in excess of authorization" under 18 § U.S.C. 1030(a)(2) and (4),

20   not the meaning of "without authorization" as used in 1030(a)(5)(A).  *LVRC*, 581 F.3d at 1134.

21   *See also Wentworth-Douglas Hosp. v. Young & Novis Prof'l Assoc.*, 2010 U.S. Dist. LEXIS

22   76401, at *9-*10 (D. N.H. July 28, 2010) ("unauthorized access" is not an element of a claim

23   under 18  U.S.C. §1030(a)(5)(A); the term "without authorization" in 18  U.S.C.

24   §1030(a)(5)(A) applies to the element of intentionally causing damage to a computer).

### E.    Microsoft's Washington Statutory and Tort Claims Against Ralls Cannot Be Dismissed Under the Agreement's Choice of Law Clause

27   Defendants argue that Washington State law claims against Ralls should be dismissed

28   under a choice of law provision in the Agreement.  As Ralls was not a party to the Agreement

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

16

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

(*see* Section II(A)(1), *supra* pp. 6-7), the choice of law provision does not apply to the claims against him.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion For Dismissal must be denied.

## MICROSOFT'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND REQUEST FOR CONTINUANCE UNDER FED. R. CIV. P. 56(F)

## I.     INTRODUCTION

Defendants move for partial summary judgment on Microsoft's claims under the CFAA, breach of contract, tortious interference, and trespass to chattels "based on incontrovertible evidence that the applicable limitations period was not tolled by fraudulent concealment." Mot. at 17:4-5. Defendants argue that Microsoft failed to show diligence between February and June 2009 and therefore, Defendants' alleged acts of fraudulent concealment (*see* pp. 10-11, *supra*) did not toll the limitations period provided by the Agreement between Microsoft and RedOrbit. Summary judgment on this issue in favor of either Ralls or RedOrbit is unjustified because they have failed to show that it is not a genuine dispute of material fact.

Further, Defendants' Motion requires the Court to resolve two major antecedent issues before it can logically arrive at the narrow issue on which Defendants seek summary judgment. Each of these antecedent issues presents a genuine dispute of material fact:

- whether Ralls was a party to the Agreement, for if he was not, the limitations period is irrelevant as to Microsoft's claims against him; and

- whether Microsoft could have filed its claims before June 2009, for if it could not have, then it filed its complaint within the limitations period, and whether the limitations period was tolled or not through fraudulent concealment is irrelevant.

Only if the Court resolves these genuine disputes of material fact—which Defendants

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

17

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

1   have not even moved upon—in Defendants' favor, does the question that Defendants *have*

2   moved on become relevant.  However, not only do Defendants fail to make a prima facie case

3   that these issues do not present genuine disputes of material fact, their Motion for Partial

4   Summary Judgment fails to even acknowledge that they exist.  Further, Defendants have

5   opposed any discovery by Microsoft into the facts related to Defendants' fraudulent

6   concealment, making summary judgment inappropriate at this time, and Microsoft requests a

7   continuance and the opportunity to obtain relevant discovery under Fed. R. Civ. P. 56(f).

8   ## II.   BACKGROUND

9   Microsoft incorporates the background section of its Opposition to Defendants' Motion

10  To Dismiss.  *See* Section I, pp. 2-6, *supra*.  That section makes clear that RedOrbit and Ralls

11  were, by 2009, seasoned operators in the business of buying fraudulently generated traffic to

12  boost advertising revenues.  *See* Section II, pp. 3-6, *supra*.  However, Ralls' background in

13  Internet scams started even before 2005.  On July 4, 2001, in the Superior Court of Arizona,

14  Maricopa County, Ralls pleaded guilty to the felony offense of "Operating a Promotional

15  Pyramid Scheme" in Arizona in violation of A.R.S. Sections 44-1735.  *See* Declaration of

16  Jeffrey L. Cox ("Cox Decl.") ¶ 8, Ex. J; ¶ 9, Ex. K.  RedOrbit.com was founded the year after

17  Ralls' conviction.  *See id*. ¶ 10, Ex. L.

18  Between January 20 and February 4, 2009, Microsoft detected a huge surge in clicks on

19  RedOrbit.com.  Starting in January, Microsoft began investigating the click-surge.  *See*

20  Declaration of Craig Schmidt ("Schmidt Decl." ¶¶ 2-4).  RedOrbit proffered several facially

21  plausible explanations for the click-surge that, for a time, misled Microsoft's investigators and

22  raised doubts as to RedOrbit and Ralls' culpability.  Schmidt Decl. ¶ 2.  From mid-February to

23  early March 2009, Microsoft analyzed the RedOrbit clicks to determine which clicks resulted

24  from "bad" traffic and which advertisers had been affected.  *See* Schmidt Decl. ¶ 3.  In March

25  2009, Microsoft's investigators conducted "penetration" tests spanning multiple weeks to help

26  them determine whether RedOrbit and Ralls could have been behind the click-surge, and if so,

27  how they accomplished it.  Schmidt Decl. ¶ 3.  In April 2009, through research conducted on

28  the Internet traffic logs of malware-infected computers, Microsoft learned that between

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

18

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

September 2008 and January 2009, RedOrbit.com had frequently been the forced destination of malware-infected computers.  Schmidt Decl. ¶ 3.  In May 2009, Microsoft continued its investigation of the click-surge, including into the ownership of the Web sites through which fraudulently generated traffic appeared to be routed.  Schmidt Decl. ¶ 3.  However, by June 2009, Microsoft was still not sure that Ralls and RedOrbit had known they were purchasing fraudulently generated traffic with the intent of defrauding Microsoft.  Schmidt Decl. ¶ 4.  Microsoft had formed the view, however, that it was confronting a novel type of click-fraud and click laundering scheme perpetrated on a massive scale and with a great deal of technical sophistication.  Schmidt Decl. ¶ 4.

In June 2009, Microsoft reviewed the data RedOrbit made available under the NDA.  Its review of the data led it to believe that the data had been tampered with and that RedOrbit and Ralls likely had acted knowingly and intentionally.  Schmidt Decl. ¶ 5.  Microsoft also realized that Ralls and RedOrbit had negotiated in bad faith and had never intended to provide Microsoft its Weblogs, which it had destroyed months previously as a matter of policy.  Schmidt Decl. ¶ 6.  These findings enabled Microsoft to determine that RedOrbit and Ralls were culpable for the click surge, as opposed to being innocent and inadvertent purchasers of bad traffic.  Schmidt Decl. ¶ 6.

## III.   **ARGUMENT**

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The moving party bears the burden of coming forward with proof of the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  If the moving party fails to carry its burden of production, the non moving party is not obliged to produce anything – even on an issue on which it would bear the burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-1103 (9th Cir. 2000) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970)). The evidence of the non moving party is to be believed, and all justifiable inferences are to be drawn in his favor.

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

19

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

*Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986).  A fact is "material" if it might affect the outcome of the suit under the governing law, and an issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party.  *Id*.

### A.   Whether the Limitations Period Was Tolled Through Fraudulent Concealment Presents a Genuine Dispute of Material Fact

To make out a claim for fraudulent concealment, a plaintiff "must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts." *Gibson v. United States.*, 781 F.2d 1334, 1345 (9th Cir. 1986).  Also, the plaintiff "must allege facts showing affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." *Id.*

Defendants' principal argument appears to be that the limitations period was not tolled as a result of Microsoft's lack of diligence in pursuing its investigation.  But the only evidence that Defendants adduce to show that there is no genuine dispute of material fact on this issue is a handful of e-mail exchanges between Ralls and Microsoft, which show a lapse in communication between Microsoft and Ralls for a period of a few months.  This meager evidence fails to meet Defendants' burden of production as the party moving for summary judgment.  *See Nissan Fire*, 210 F.3d at 1102-1103.  Furthermore, as the evidence adduced by Microsoft shows, Microsoft diligently continued to investigate the click-surge on RedOrbit.com each month between January and June 2009.  *See Schmidt Decl. ¶¶ 2-5.*  Taking this evidence as true, and drawing all reasonable inferences in favor of Microsoft, a reasonable fact-finder would have a sufficient basis to find that Microsoft exercised due diligence.  *See Anderson*, 477 U.S. at 255 (an issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party).

Defendants advance a smattering of smaller arguments related to the issue of tolling, though they do not explicitly identify them as part of their Motion for Partial Summary Judgment and adduce no evidence to show that no genuine dispute of material fact exists.

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

20

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

1    Nonetheless, in an abundance of caution, Microsoft addresses each here.

2           Defendants argue that "[n]owhere does Microsoft assert that Ralls' attempts to explain

3    the click-surge deceived it into believing it did not possess a claim." Mot. at 10:14-15.

4    However, the issue is not whether Microsoft was deceived, but whether a reasonable person

5    would have been. *See Gibson*, 781 F.2d at 1345. Defendants adduce no evidence that no

6    genuine issue of material fact exists, and in fact , RedOrbit and Ralls' explanations did delay

7    Microsoft's determination that RedOrbit and Ralls had acted with the necessary degree of

8    *scienter*. *See* Schmidt Decl. ¶¶ 2-4.

9           Defendants argue that the only data Microsoft received from RedOrbit was the Google

10   Urchin data, and that Microsoft does not allege that its review of that information was

11   necessary or material to its determination that it had claims against RedOrbit and Ralls.

12   Evidence adduced by Microsoft shows that this evidence was critical in Microsoft's

13   determination that Defendants had acted knowingly. *See* Schmidt Decl. ¶¶ 5-6. Beyond the

14   data provided by RedOrbit and Ralls, other crucial evidence on RedOrbit and Ralls' culpability

15   was not available until after May 17, 2009, but was critical in determining whether Microsoft

16   could file claims against RedOrbit and Ralls. *See* Schmidt Decl. ¶ 6.

17          Finally, Defendants argue that Microsoft's conclusion that it was entitled to terminate

18   RedOrbit's contract and refuse payment for the clicks at issue no later than February 16, 2009

19   "conclusively demonstrates that it understood the basis for the click surge claims . . ." Mot. at.

20   11:26-27. Defendants ignore, however, that the Agreement allowed Microsoft to terminate

21   RedOrbit's account for *any* reason. Am. Compl. Ex. A ¶12. Therefore, the fact that Microsoft

22   terminated RedOrbit's adCenter account in February does not establish anything beyond the

23   fact that Microsoft chose to no longer do business with RedOrbit. On none of these issues have

24   Defendants carried their burden of showing that there is no genuine issue of material fact.

25          **B.    Defendants Ignore Numerous Other Genuine Disputes of Material Fact**

26          The narrow issue upon which Defendants have moved for partial summary judgment

27   and dismissal of the click-surge related claims against both Defendants is whether fraudulent

28   concealment tolled the limitations period. Logically, however, to reach this issue, the Court

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

21

1  must resolve a number of antecedent issues that present genuine disputes of material fact not

2  mentioned in Defendants' Motion.  First, as to Ralls, a genuine dispute exists as to whether

3  Ralls was a party to the Agreement.  If he was not, as Microsoft contends, then the issue of

4  tolling and fraudulent concealment is irrelevant to Microsoft's claims against him.  Second, a

5  genuine dispute of material fact exists as to when Microsoft could have first filed its claims.  If

6  not until June 2009, as Microsoft contends, then the issue of tolling and fraudulent concealment

7  is irrelevant as to both Defendants.  Defendants have not acknowledged that these genuine

8  disputes of material fact are implicated by their Motion, nor have they adduced any evidence

9  showing that a reasonable fact finder could not find in Microsoft's favor on the issues of 1)

10  whether Ralls was a party to the contract, and 2) whether Microsoft could have filed its claims

11  before June 2009.

### C.    Microsoft Is Entitled to a Rule 56(f) Continuance on Defendants' Motion for Partial Summary Judgment to Obtain Discovery Related to Its Claims

14          For all the reasons stated above, Defendants' Motion for Partial Summary Judgment

15  should be denied.  If, however, the Court determines that Defendants' have met their burden of

16  demonstrating that there are no genuine issues of material fact as to 1) whether or not Ralls was

17  a party to the Agreement; 2) when Microsoft could have filed its claims; and 3) whether the

18  applicable limitations period was tolled by Defendants' fraudulent concealment, Microsoft

19  requests a continuance under Fed. R. Civ. P. 56(f) to obtain discovery related to the issue of

20  fraudulent concealment.  Defendants, despite repeated requests from Microsoft, have refused to

21  even hold a discovery conference under Fed. R. Civ. P. 26(f).  *See* Cox Decl. ¶¶ 2-6, Exs. A-I.

22          Where a summary judgment motion is filed early in litigation, before a party has had an

23  opportunity to pursue discovery related to its theory of the case, relief under Fed. R. Civ. P

24  56(f) must be granted "fairly freely."  *Burlington N. Santa Fe Railroad Co. v. Assiniboine &*

25  *Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 774 (9th Cir. 2003); *Rosalez v. Baker*,

26  Case No. C09-0065-JCC, 2010 U.S. Dist. LEXIS 109974, at *11 (W.D. Wash. Oct. 15, 2010).

27  In cases where no discovery has taken place, a party seeking relief under Fed. R. Civ. P. 56(f)

28  is not required to "frame its motion with great specificity as to the kind of discovery likely to

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

22

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

1  turn up useful information, as the ground for such specificity has not yet been laid."

2  *Burlington*, 323 F.3d at 774.

3      Microsoft has had practically no opportunity to pursue discovery related to its theory of

4  the case.  To date, it has had the opportunity only to pursue discovery to identify Doe

5  Defendants, and limited substantive discovery from two third parties.  It has not had the

6  opportunity to pursue any discovery from RedOrbit or Ralls,  likely the only parties to have

7  evidence related to the issue of fraudulent concealment.  The likelihood that such evidence

8  exists is buttressed by Ralls' guilty plea for running a credit card pyramid scheme, the

9  allegations pleaded by Microsoft as to Defendants' long-running use of malware-generated

10  traffic to boost profits and Defendants other acts of fraudulent concealment.

11      Microsoft has had next to no opportunity to pursue discovery in this case, and

12  absolutely no opportunity to pursue discovery from Defendants, and, therefore, need not

13  describe with great specificity the kind of discovery likely to turn up useful information.  *See*

14  *Burlington*, 323 F.3d at 774.  Nonetheless, discovery on the following topics is likely to

15  uncover facts related to Defendants' fraudulent concealment, and thus essential to justify

16  Microsoft's Opposition to Defendants' Motion for Partial Summary Judgment: RedOrbit

17  communications and documents related to the click-surge, including correspondence, orders

18  and invoices with, to, or from traffic providers such as MIVA and SearchFeed, relating to the

19  traffic purchased by RedOrbit in January and February 2009; internal RedOrbit

20  communications related to Microsoft's investigation of the click surge, and RedOrbit's

21  responses to Microsoft's queries; RedOrbit's Google Analytics data from late January to early

22  February 2009; RedOrbit's Google Urchin data from late January to early February 2009; and

23  communications and documents related to RedOrbit's policy of periodically destroying its

24  Weblogs.  *See* Cox Decl. ¶ 7.  In addition, Ralls, as RedOrbit's President, likely has first-hand

25  knowledge of information related to the click-surge and any subsequent fraudulent

26  concealment, and taking his deposition would likely uncover admissible evidence on those

27  topics. *Id.*

28      This discovery is critical to Microsoft's Opposition to Defendants' Motion for Partial

MICROSOFT CORPORATION'S
OPPOSITION TO MOTION TO DISMISS
CIV NO. 2:10-CV-00818-JCC

23

Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, Washington  98104-7097
tel+1-206-839-4300

1    Summary Judgment because it would reveal facts related to the operation of the alleged click-

2    fraud and Defendants' affirmative acts, (including acts of omission in response to Microsoft's

3    inquiries) of fraudulent concealment related to that operation. *Id.* Microsoft cannot obtain

4    these facts without pursuing discovery from Defendants, and they are essential to

5    demonstrating that Defendants have not met their burden of showing the absence of genuine

6    issues of material fact on whether the applicable limitations period was tolled by Defendants'

7    fraudulent concealment. *Id.*

8        Therefore, if the Court does not deny Defendants' Motion for Partial Summary

9    Judgment, Microsoft requests a continuance so that it can conduct reasonable discovery on the

10    issue of Defendants' fraudulent concealment.

11                 **IV.**    **CONCLUSION**

12        For the foregoing reasons, Defendants' Motion For Partial Summary Judgment must be

13    denied.

14

15    Dated:  October 25, 2010           By:    */s/ Mark Parris*

                                       Mark Parris (Bar No. 13870)

16                             mparris@orrick.com

                            Jeffrey Cox (Bar No. 37534)

17                             jcox@orrick.com

                            ORRICK HERRINGTON & SUTCLIFFE

18                             LLP

                            701 Fifth Avenue, Suite 5600

19                             Seattle, WA  98104

                            Telephone:  (206) 839-4300

20

21                             I. Neel Chatterjee (Pro Hac Vice)

                            nchatterjee@orrick.com

22                             Gabriel M. Ramsey (Pro Hac Vice)

                            gramsey@orrick.com

23                             ORRICK HERRINGTON & SUTCLIFFE

                            LLP

24                             1000 Marsh Road

                            Menlo Park, CA 94025

25                             Telephone:  (650) 614-7400

26

27                             *Attorneys for Plaintiff*

                            MICROSOFT CORPORATION

28

MICROSOFT CORPORATION'S         24          Orrick Herrington & Sutcliffe LLP
OPPOSITION TO MOTION TO DISMISS                   701 5th Avenue, Suite 5600
CIV NO. 2:10-CV-00818-JCC                        Seattle, Washington  98104-7097
                                               tel+1-206-839-4300