THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, | Case No. C10-0818-JCC |
| Plaintiff, | ORDER |
| v. | |
| ERIC C. RALLS, REDORBIT, INC., and JOHN DOES 1-10, | |
| Defendants. | |

This matter comes before the Court on Defendants'[1] motion to dismiss and alternative motion for partial summary judgment (Dkt. No. 28), Plaintiff's response (Dkt. No. 33), Defendants' reply (Dkt. No. 37), Plaintiff's surrelpy (Dkt. No. 41), Plaintiff's motion for leave to file a second amended complaint (Dkt. No. 42), Defendants' response (Dkt. No. 47), and Plaintiff's reply (Dkt. No. 49). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and grants Plaintiff's second motion to amend, grants in part and denies in part Defendants' motion to dismiss, and grants in

---

[1] For the purposes of this order, the Court refers to RedOrbit, Inc., and Eric V. Ralls as "Defendants." The Court refers to Vertro, Inc., as "Defendant Vertro."

ORDER, C10-0818-JCC
PAGE - 1

1   part and denies in part Defendants' motion for partial summary judgment for the reasons

2   explained herein.

3   I.       BACKGROUND

4           RedOrbit, Inc., a Texas corporation with its principal place of business in Texas,

5   publishes the website RedOrbit.com, providing photographs, articles, and videos on science-

6   related subjects. (Dkt. No. 45-1 at 3.) Eric V. Ralls is the president of RedOrbit. (*Id.* at ¶ 2.)

7           Plaintiff owns and operates an online advertising platform called adCenter that unites

8   advertisers seeking to place their advertisements on websites with publishers of websites who

9   want to make money by hosting advertisements. (*Id.* at ¶ 10.) AdCenter employs a pay-per-

10  click model whereby an advertiser is charged each time its advertisement is clicked, and the

11  publisher hosting that advertisement is paid each time it is clicked. (*Id.* at ¶ 12.)

12          Some publishers buy online traffic to increase the viewership of their website. (*Id.*)

13  While Plaintiff concedes that buying online traffic is not inherently fraudulent, it runs the risk

14  of the use of "click fraud." (*Id.*; Dkt. No. 45-1 at ¶ 14.) Click fraud is the use of methods that

15  imitate legitimate web-browser clicks on an advertisement but where the clicks are made solely

16  to generate charges to increase the payments received by the publisher. (Dkt. No. 45-1 at ¶ 14.)

17  As a result, advertisers are charged for fraudulent clicks. (*Id.* at ¶¶ 19–20.)

18          On September 19, 2008, RedOrbit joined the adCenter beta program and agreed to a

19  pre-release license and service agreement. (*Id.* at ¶ 27.) The agreement provides, "By

20  installing, accessing or otherwise using the Service, you accept the terms of this agreement."

21  (Ex. A 1 (Dkt. No. 22-1 at 2).) The agreement prohibits publishers from "directly or indirectly

22  generat[ing] impressions or clicks on an [sic] Ads, or authoriz[ing] or encourag[ing] others to

23  do so, through any automated, deceptive, fraudulent or other invalid means." (*Id.* at ¶ 4.) The

24  agreement also contains a choice-of-law clause, providing that Washington law governs the

25  contract and breach of contract and that the laws of the publisher's state govern all other

26  claims. (*Id.* at ¶ 15.) Additionally, the agreement provides for a one-year-limitation period:

ORDER, C10-0818-JCC
PAGE - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

> 17. CLAIM MUST BE FILED WITHIN ONE YEAR. Any claim related to this contract or Service must not be brought unless within 1 year. The 1 year period begins on the date when the claim first could be filed. If it is not filed in time, then that claim is permanently barred. This applies to you and your successors. It also applies to us and our successors and assigns.

(*Id.* at ¶ 17.) While signing up for the program, Ralls accessed adCenter and created an account using Plaintiff's Connect tool and, under "User Details," listed RedOrbit as the company on the account. (Ex. A 1 (Dkt. No. 50-1 at 2.)

According to Plaintiff's complaint, RedOrbit averaged approximately 75 valid clicks per day between September and December 2008. (Dkt. No. 45-1 at ¶ 29.) Plaintiff alleges that during this time, Defendants were buying traffic from SearchFeed, a business unit of Defendant Vertro. (*Id.*) Plaintiff alleges that starting on January 20, 2009, Ralls began to purchase its traffic from Miva Media, another division of Defendant Vertro, and stopped purchasing traffic from SearchFeed. (*Id.*) Starting on January 20, 2009, and continuing until February 4, 2009, clicks on ads on RedOrbit surged to more than 10,000 per day. (*Id* at ¶ 34.)

Plaintiff alleges that Defendants used an automated process to generate clicks during the surge period and bases its allegations on five pieces of evidence. Plaintiff contends that the allegedly fraudulent clicks generated fraudulent data that was then sent to Plaintiff's computers and used to determine what advertisers should be charged for each click. (*Id.* at ¶ 42.) Plaintiff alleges that Defendants Ralls, RedOrbit, and Vertro knew that some of the traffic was malware generated. (*Id.* at ¶ 44.) Plaintiff also alleges that in February 2009, in the midst of Plaintiff's investigation, Ralls cut its budget with Miva Media in half, saying, "I need to slow things down over the next 7-10 days." (*Id.* at ¶ 57.)

After the surge began, Plaintiff inquired into the click surge via email. (*Id.* at ¶ 52.) Ralls offered a variety of seemingly legitimate explanations for the click surge but did not mention its recent change in traffic providers. (*Id.*) In February 2009, Plaintiff twice requested RedOrbit's weblogs from the surge period, amongst other information. (*Id.* at ¶ 59.) Ralls responded with various answers to questions and asked what Plaintiff meant by weblogs. (Ex.

1    A at 6–7 (Dkt. No. 29-1 at 7–8).) When Plaintiff did not respond to Ralls's email, Ralls

2    followed up, asking, "What more do you need from me to get this restarted?" (*Id.* at 6.) After

3    Plaintiff responded with a description of what a weblog is and how Ralls could get the

4    weblogs, Ralls indicated that he would be "happy to give [Plaintiff] whatever [Plaintiff]

5    need[s] to resolve this as soon as possible" but that he would like Plaintiff to sign a

6    nondisclosure agreement (NDA) to protect RedOrbit. (*Id.* at 4–5.)  Plaintiff responded that its

7    legal team was reviewing the NDA and would get back to him "asap." (*Id.* at 3.) A week later,

8    Ralls followed up, asking Plaintiff if it had made any progress with the NDA. (*Id.* at 2.)

9    Plaintiff replied, saying, "An NDA will not be necessary at this time. We have completed our

10   investigation and have decided to permanently close your Publisher account with

11   Microsoft. . . . Please note that no further information is being requested from you." (*Id.* at 1.)

12            In April 2009, Ralls emailed Plaintiff requesting payment for January and February.

13   (Ex. B 3 (Dkt. No. 29-2 at 4).) Plaintiff responded, "Because this account violated Microsoft

14   policy during this same time period, we will not be remitting any type of payment to you.

15   Again, we do not need any additional information from you." (*Id.* at 2.) On May 21, 2009,

16   Ralls again requested payment from Plaintiff. (Dkt. No. 45-1 at ¶ 45.)

17            In June 2009, Plaintiff executed the NDA and Ralls provided Plaintiff with access to

18   RedOrbit's analytics suite. (*Id.* at ¶ 61–62.) Plaintiff did not receive access to RedOrbit's

19   weblogs, because RedOrbit routinely deleted its weblogs after three days. (*Id.* at ¶ 62.)

20   II.      DISCUSSION

21            **A.      Motion to Amend**

22            Because more than twenty-one days have passed since Defendants filed a response

23   invoking Rule 12(b)(6), Plaintiff must seek leave of the Court to further amend its complaint.

24   Fed. R. Civ. P. 15(a). "[T]he court should freely give leave when justice so requires," *id.*, but

25   the Court may deny such a motion due to "undue delay, bad faith or dilatory motive on part of

26   the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

1  prejudice to the opposing party . . . , [and] futility of amendment," *Carvalho v. Equifax Info.*

2  *Servs.*, 615 F.3d 1217, 1232 (9th Cir. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

3  "Requests for leave to amend should be granted with extreme liberality." *Moss v. U.S. Secret*

4  *Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (internal quotations omitted).

5       The Court finds that Plaintiff's motion to amend is not unduly delayed, in bad faith,

6  futile, unduly prejudicial, or part of a repeated failure to cure previous deficiencies. Plaintiff's

7  motion to amend is the result of its identification of a previously unknown defendant.

8  Accordingly, the Court grants Plaintiff's motion to amend.

9       **B.    Motion to Dismiss and Alternative Motion for Partial Summary Judgment**

10       In the interests of time and efficiency, the Court considers Defendants' motion to

11  dismiss and alternative motion for partial summary judgment as against the second amended

12  complaint.[2] Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to test the

13  formal sufficiency of an opponent's claim for relief by bringing a motion to dismiss for failure

14  to state a claim. When a defendant moves to dismiss under Rule 12(b)(6), the reviewing court

15  accepts all of the allegations in the complaint as true and construes them in the light most

16  favorable to the plaintiff. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 n.1 (2002); *Scheuer*

17  *v. Rhodes*, 416 U.S. 232, 236 (1974). "[C]onclusory allegations of law and unwarranted

18  inferences will not defeat an otherwise proper motion to dismiss." *Vasquez v. L.A. Cnty.*, 487

19  F.3d 1246, 1249 (9th Cir. 2007).

20       The Court analyzes the sufficiency of the complaint against the strictures of Rule 8,

21  which requires that a federal plaintiff give only "a short and plain statement of the claim

22  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Swierkiewicz*,

23

24       [2] Rather than rejecting the amendment of certain portions of Plaintiff's complaint for
25  futility, the Court permits the amendment and decides the issues underlying Defendants'
   motion to dismiss and alternative motion for partial summary judgment as against the second
26  amended complaint.

ORDER, C10-0818-JCC
PAGE - 5

534 U.S. at 511–12; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). In cases involving claims of fraud, the Court evaluates the complaint against the requirements of Rule 9. Rule 9 provides that "[i]n allegations involving fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of the law." Fed. R. Civ. P. 56(a). A defendant is entitled to move for summary judgment by alleging that the nonmoving party has failed to make a sufficient showing on an essential element of his or her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). To overcome such a motion, the plaintiff bears the burden of producing evidence with respect to the identified element. "One of the principal purposes of the summary-judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323.

### 1. Limitations Provision of the Agreement

#### a. Date when Plaintiff Could First File Complaint

The one-year-limitation provision in the agreement states that "[t]he 1 year period begins on the date when the claim first *could* be filed." (Ex. A ¶ 17 (Dkt. No. 22-1 at 5).) If the claim is not brought within one year, it is permanently barred. (*Id.*)

Plaintiff did not meet its summary-judgment burden to demonstrate that there is a genuine dispute as to when the claim first could be brought. [3] Plaintiff alleges that it could not

---

[3] On the motion to dismiss, Plaintiff met its burden of pleading that the claims are not time-barred by giving a short and plain statement of its claim that it could not first bring this case until June 2009, supported by its allegations that Defendants misled Plaintiff as to the actual cause of the click surge. (*See* Dkt. No. 45-1 at ¶ 53.) Accordingly, the Court denies Defendants' motion to dismiss all claims against Defendants as time-barred by the agreement.

1    first file its complaint until after May 17, 2009 (one year before Plaintiff filed its complaint),

2    because Plaintiff did not yet have sufficient evidence of scienter as required in two of its

3    claims. (Dkt. No. 33 at 8.)

4         The choice-of-law clause of the parties' agreement provides that Washington law

5    applies to the interpretation of the agreement and claims for breach of it. (Ex. A ¶ 15 (Dkt. No.

6    22-1 at 5).) Since the Court is interpreting the contract as well as considering a claim for

7    breach of the limitations clause of the contract, Washington law applies. Washington uses the

8    discovery rule to determine when a limitations period begins to run. *See Giraud v. Quincy*

9    *Farm & Chem.*, 6 P.3d 104, 108–09 (Wash. Ct. App. 2000); *see also Allen v. State*, 826 P.2d

10   200, 203 (Wash. 1992). Under the discovery rule, the limitations period does not start to run

11   "until the plaintiff knows or, through the exercise of due diligence, should have known all the

12   facts necessary to establish a legal claim." *Id.* "To invoke the discovery rule, the plaintiff must

13   show that he or she could not have discovered the relevant facts earlier." *Giraud*, 6 P.3d at 109.

14   Because both the agreement and the Washington discovery rule look to when a claim could

15   first be brought, the Court concludes that the limitations provision in the agreement functions

16   as the equivalent of the Washington discovery rule. Accordingly, under the terms of the

17   agreement, a claim first could be filed when Plaintiff knew or, through due diligence, should

18   have known all the facts necessary to establish a legal claim.

19        Plaintiff knew or through due diligence should have known all of the facts necessary to

20   bring its claims before May 2009. Plaintiff outlines four pieces of evidence that it allegedly

21   needed for it to establish scienter but that it did not receive until after May 17, 2009. (Dkt. No.

22   33 at 8.) First, Plaintiff alleges that Defendants' May 21, 2009, demand for payment from the

23   click-surge period indicated culpable intent. (*Id.*) However, Defendants also demanded

24   payment on April 14, 2009. (Ex. B 3 (Dkt. No. 29-2 at 4).) If an inference of culpable intent

25   arises from the May 21 demand for payment, the same inference arises from the April 14

26   demand. Plaintiff possessed this evidence before May 17, 2009. Plaintiff also points to (1) the

1    alleged bad faith of RedOrbit in its June 2009 negotiations to provide weblogs, (2) RedOrbit's

2    disclosure in June 2009 of its policy of destroying weblogs after three days, and (3) Plaintiff's

3    analysis of the information that RedOrbit "finally" provided in June 2009. (*Id.* at 8–9.) Plaintiff

4    did not receive those three pieces of evidence until after its June 2009 request for RedOrbit's

5    weblogs. (*Id.*)

6            However, Plaintiff would have discovered all of this evidence months earlier had it

7    exercised due diligence. The email chain between Plaintiff and Ralls demonstrates that in

8    February 2009, Ralls was willing to provide Plaintiff with information in his possession. (Ex.

9    A 4 (Dkt. No. 29-1 at 5).) When Plaintiff did not respond to his offers of information, Ralls

10   followed up with Plaintiff. (*See* Ex. A 1–6 (Dkt. No. 29-1 at 2–7).) Plaintiff twice stated that it

11   did not need additional information from Ralls—once in February and once in April. (Ex. B.

12   1–3 (Dkt. No. 29-2 at 2–4).) Plaintiff did not exercise due diligence; it caused the delay by

13   repeatedly telling Ralls that it needed no additional information. Had Plaintiff exercised due

14   diligence, Plaintiff would have acquired all the above information before May 17, 2009. The

15   Court concludes that no genuine factual dispute exists as to whether the one-year limitations

16   period began to run before May 17, 2009.

17           Defendants' alleged fraudulent concealment did not toll the one-year limitations period.

18   For a fraudulent concealment claim, a plaintiff must "plead with particularity the

19   circumstances surrounding the concealment and state facts showing his due diligence in trying

20   to uncover the facts." *Gibson v. United States*, 781 F.2d 1334, 1345 (9th Cir. 1986). As

21   discussed above, Plaintiff did not exercise due diligence in trying to uncover the facts.

22   Accordingly, the Court rejects Plaintiff's fraudulent concealment claim. No genuine issue of

23   material fact exists as to when Plaintiff could have filed its claims and whether the limitations

24   period was tolled by fraudulent concealment. The Court concludes that all claims against any

25   party to the contract are barred by the limitations provision. Plaintiff's first and second

26   amended complaints clearly allege that RedOrbit is a party to the agreement (*See* Dkt. No. 22

ORDER, C10-0818-JCC
PAGE - 8

at 7; Dkt. No. 45-1 at 11). Accordingly, the Court grants summary judgment for RedOrbit that all claims against RedOrbit are time-barred. If Ralls is also a party to the agreement, then all claims against him are also time-barred.

### b. Defendant Ralls as a Party to the Agreement

The Court concludes that a genuine dispute of material fact exists as to whether Ralls was a party to the agreement and, thus, whether the one-year-limitations provision applies to him.[4] It is accepted law that "[a]n agent does not become a party to a contract made on behalf of a disclosed principal unless the agent and the third party so agree." Restatement (Third) of Agency §6.01 (2006); *see also State v. Hanson*, 800 P.2d 1124, 1131 (Wash. Ct. App. 1990). Here, although the complaint does not explicitly state that RedOrbit was the disclosed principal of the agreement, it is reasonably inferred from the pleadings. Further, the Connect record, made when Ralls created an adCenter account, shows that Ralls disclosed the identity of RedOrbit, his principal. (Dkt. No. 50-1 at 2.)

The agreement states, "By installing, accessing or otherwise using the Service, you accept the terms of this agreement." (Dkt. No. 22-1 at 2.) Although Ralls accessed and used the adCenter service, Plaintiff contends that Ralls did so only while acting as an agent for RedOrbit. That assertion is consistent with the Connect record, whereby Ralls disclosed he was registering in conjunction with his company, RedOrbit. The Court finds a genuine dispute as to whether Ralls was a party to the agreement. Accordingly, the Court denies Defendants' motion for partial summary judgment that Plaintiff's claims are time-barred against Ralls under the agreement. The Court considers the remaining arguments as against Ralls only.

//

---

[4] When considering a motion to dismiss, the Court construes the allegations in the light most favorable to Plaintiff. Ralls would not be a party to the agreement because Plaintiff's second amended complaint alleges no facts indicating that he would be a party. Accordingly, the Court denies Defendants' motion to dismiss all claims against Ralls as time-barred.

1

#### 2.  Alleging Fraud and Knowledge with Particularity

2        Plaintiff adequately pleads fraud and knowledge, meeting the particularity requirement

3    of Federal Rule of Civil Procedure 9(b). "Averments of fraud must be accompanied by the

4    who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567

5    F.3d 1120, 1125 (9th Cir. 2009) (internal citation omitted).  "Claims made on information and

6    belief are not usually sufficiently particular, unless they accompany a statement of facts on

7    which the belief is founded." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035,

8    1042 (9th Cir. 2010) (internal citation omitted).

9        Plaintiff's allegations comply with Rule 9 by providing a sufficient factual basis for its

10    allegations that Defendants knew that the traffic was fraudulent. First, Plaintiff points to two

11    prior cases against RedOrbit where RedOrbit purchased traffic of the type prohibited by

12    Plaintiff's agreement. (Dkt. No. 45-1 at ¶¶ 22–23.) Second, Plaintiff indicates that, as of

13    January 23, 2009, Ralls knew that a percentage of the traffic that he purchased stayed on

14    RedOrbit.com for less than one second. (*Id.* at ¶ 44.) Third, Plaintiff alleges that in the middle

15    of Plaintiff's investigation Ralls directed Miva Media to slow down its traffic for seven to ten

16    days. (*Id.* at 45-1 at ¶ 57.) Finally, when Plaintiff asked Ralls what he believed might have

17    created the increase in clicks, Ralls failed to mention that Defendants changed traffic providers

18    on the same day that the click surge began. (*Id.* at ¶ 52.) These facts provide a reasonable basis

19    on which Plaintiff's allegations are founded. Plaintiff's pleadings satisfy the Rule 9(b)

20    particularity requirement. The Court denies Defendants' motion to dismiss Plaintiff's fraud

21    claims for failure to plead with particularity.

22        Defendants allege that Plaintiff failed to plausibly establish that Defendants knowingly

23    purchased fraudulent traffic.[5] The above facts provide a sufficient basis for Plaintiff's

24    _____

25        [5] The Court disregards Defendants' argument that Plaintiff failed to state a claim under

26    the Washington Consumer Protection Act for failing to meet the pleading standard for

ORDER, C10-0818-JCC
PAGE - 10

1    allegations that Ralls acted with knowledge. Thus, the Court denies Defendants' motion to

2    dismiss for failure to allege knowledge.

3                    **3.    Computer Fraud and Abuse Act Claims**

4            Plaintiff alleges that Defendants violated 18 U.S.C. § 1030(a)(4) and (5)(A) of the

5    Computer Fraud and Abuse Act (CFAA) by accessing and using Plaintiff's computers without

6    or in excess of authorization to further the click-fraud scheme. (Dkt. No. 45-1 at 24.) The Court

7    dismisses Plaintiff's § 1030(a)(4) claim but upholds Plaintiff's § 1030(a)(5)(A) claim.

8            A person violates 18 U.S.C. § 1030(a)(4) when that person

9            knowingly and with intent to defraud, accesses a protected computer without
             authorization, or exceeds authorized access, and by means of such conduct
10           furthers the intended fraud and obtains anything of value, unless the object of
             the fraud and the thing obtained consists only of the use of the computer and the
11           value of such use is not more than $5,000 in any 1-year period.

12   Under the CFAA, value is determined "relative to one's needs and objectives." *United States v.*

13   *Czubinski*, 106 F.3d 1069, 1078 (1st Cir. 1997). Value can include intangible benefits, such as

14   customers and goodwill. *See In re Am. Online, Inc. Ver. 5.0 Software Litig.*, 168 F.Supp. 2d

15   1359, 1380 (S.D. Fla. 2001). Black's Law Dictionary defines value as "[t]he significance,

16   desirability, or utility of something."

17           Plaintiff fails to state a claim under § 1030(a)(4) because Plaintiff does not allege that

18   Defendants obtained anything of value through the alleged click-fraud scheme. Plaintiff never

19   paid any money or gave anything else to Defendants as a result of the allegedly fraudulent

20   clicks, yet Plaintiff contends that Defendants obtained value in the form of adCenter credits for

21   $252,000.00. (Dkt. No. 33 at 15.) According to Plaintiff, Ralls's objective was to profit from

22   the scheme. (Dkt. No. 33 at 5.) However, Defendants did not profit in any form. The adCenter

23   credits do not constitute anything of significance, desirability, or utility. Defendants could not

24

25   ──────────────────

26   knowledge because the argument was improperly raised for the first time in Defendants' reply
     brief. (*See* Dkt. No. 37 at 6.)

     ORDER, C10-0818-JCC
     PAGE - 11

exchange the disputed adCenter credits for money or anything else of value. The adCenter credits, unlike customers or goodwill, are of absolutely no benefit to Defendants. Since Plaintiff does not plead that Defendants received anything of value, Plaintiff fails to plead a claim under 18 U.S.C. § 1030(a)(4). The Court dismisses the claim without prejudice.

On the other hand, the Court finds that Plaintiff adequately states a claim under § 1030(a)(5)(A) of the CFAA. A person violates § 1030(a)(5)(A) when that person "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer." Plaintiff states a claim under § 1030(a)(5)(A)[6] because it alleges that Defendants, by means of registering fraudulent clicks, transmitted fraudulent data to Plaintiff and corrupted the data on Plaintiff's computers. (Dkt. No. 45-1 at ¶¶ 72–75.) As discussed above, Plaintiff adequately alleges Defendants' intent and knowledge. Because access is not an element of subsection (a)(5)(A), Defendants' arguments on access are inapposite. The Court denies Defendants' motion to dismiss Plaintiff's § 1030(a)(5)(A) claim.

### 4.  Washington Statutory and Tort Claims

The agreement provides that all claims other than claims for breach of contract shall be governed by the state where Plaintiff's counterparty lives. (Dkt. No. 22-1 at 5.) Plaintiff brings several claims against Ralls, a resident of Texas, under Washington law. (*See* Dkt. No. 45-1 at 26, 27, 29.) Defendants allege that Ralls is a party to the agreement, so all Washington State law claims except for breach of contract should be dismissed under the choice-of-law provision. (Dkt. No. 28 at 16.) As discussed above, Plaintiff's allegations, when taken in a light most favorable to Plaintiff, do not allege that Ralls was a party to the agreement. Accordingly,

---

[6] In Defendants' reply, Defendants make new arguments under subsections (i), (ii), and (iii) of the former version of 18 U.S.C. § 1030(a)(5)(A). (Dkt. No. 37 at 8.) However, Defendants inappropriately raise new arguments in their reply. Accordingly, the Court disregards the new arguments.

1  the choice-of-law provision would not apply to Ralls. The Court denies Defendants' motion to

2  dismiss the statutory and tort claims under Washington law against Ralls.

3  **5.  Plaintiff's Request for a Rule 56(d) Continuance**

4  Plaintiff requests a continuance of the Court's summary-judgment decision under

5  Federal Rule of Civil Procedure 56(d)[7] to obtain discovery on the issue of fraudulent

6  concealment. (Dkt. No. 33 at 22.) Rule 56(d) provides, "If a nonmovant shows by affidavit or

7  declaration that, for specified reasons, it cannot present facts essential to justify its opposition,

8  the court may . . . allow time to obtain affidavits or declarations or to take discovery."

9  Plaintiff lists a number of topics it would like to explore in discovery to support its

10  fraudulent-concealment argument, including RedOrbit's communications and documents

11  related to the click surge, internal RedOrbit communications related to Plaintiff's investigation

12  of the click surge, RedOrbit's Google Analytics data from the surge period, and

13  communications related to RedOrbit's policy of destroying weblogs after three days. (Dkt. No.

14  33 at 23.) However, the Court decided the fraudulent-concealment claim on the basis of

15  Plaintiff's failure to exercise due diligence, not because of Plaintiff's failure to plead with

16  particularity the circumstances surrounding the concealment. Any discovery on the topics

17  listed by Plaintiff would have no bearing on the present decision. Accordingly, the Court

18  denies Plaintiff's request for a Rule 56(d) continuance.

19  III.    CONCLUSION

20  For the foregoing reasons, the Court DENIES Defendants' motion to dismiss Plaintiff's

21  claims as time-barred. The Court GRANTS summary judgment in favor of RedOrbit because

22  Plaintiff's claims are time-barred. The Court DENIES summary judgment on Defendants'

23  claim that Ralls is a party to the agreement. The Court DENIES Defendants' motion to dismiss

24  _____

25      [7] Plaintiff requested a Rule 56(f) continuance in October. However, due to changes in
   Rule 56 that became effective December 1, 2010, the relevant continuance is now under Rule

26  56(d).

ORDER, C10-0818-JCC
PAGE - 13

1    for Plaintiff's failure to plead fraud with particularity. The Court DENIES Defendants' motion

2    to dismiss for Plaintiff's failure to plead knowledge. The Court GRANTS Defendants' motion

3    to dismiss Plaintiff's claims under 18 U.S.C. § 1030(a)(4). The Court DENIES Defendants'

4    motion to dismiss Plaintiff's claims under 18 U.S.C. § 1030(a)(5)(A). The Court DENIES

5    Plaintiff's Rule 56(d) continuance request.

6

7        DATED this 10th day of March, 2011.

8

9

10                                          _____

11                                          John C. Coughenour
                                            UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER, C10-0818-JCC
PAGE - 14